## S. L. Fullenwider v. Jesse Ewing.

1. Trial Court—*Decision on the Facts, not Reversed.* The evidence commented upon, and *held,* that the supreme court cannot, from the evidence as it appears on paper, reverse the decision of the trial court upon the facts, when such decision was founded principally upon parol evidence, and there was sufficient parol evidence to uphold the decision of the trial court.

2. Judgment, *Petition to Vacate; Practice.* Where a judgment is rendered in the district court in favor of the plaintiff, and some time after the adjournment of the court the defendant files a petition as plaintiff in the same court, under § 568 of the civil code, praying that said judgment shall be vacated and a new trial granted, and for such other and further relief as may be equitable, and such petition is based upon the grounds that the plaintiff in the original action (defendant in the subsequent proceeding) has in fact no cause of action against the original defendant, (subsequent plaintiff,) and that the original judgment was obtained by the fraud, conspiracy and perjury of the original plaintiff and others, *held,* that although the proceeding on such petition may to some extent be considered as a mere incident to the original action, and as belonging to and growing out of the original action, yet it nevertheless partakes to a very great extent of the nature of an action itself, and therefore that it should be tried upon legal evidence, just as other actions are tried; and therefore that upon the trial in such a proceeding an affidavit of a witness cannot be used as original evidence upon the merits of the case when the witness himself is present in court under subpena, and his oral testimony can be taken and used in the case.

3. ——— *Held,* Under the circumstances of this case, that the trial court did not err in excluding a certain letter.

4. Leading Question; *Immaterial Error; Judgment, not Reversed.* In a case tried by the district court, without a jury, upon a petition to vacate a judgment, and for a new trial, a question was asked by the counsel of the then defendant, the original plaintiff, of the then defendant, himself, who was then testifying as a witness with respect to a matter which

was competent to be proved in the case, but the question was to some extent leading, and assumed a certain fact which probably had not yet been proved, and probably should not have been proved; and the answer to the question was with reference to that portion of the question which was proper to be proved. *Held*, That the court erred in permitting the question to be asked in the form in which it was asked; but where, after taking the whole of the case together, it is found to be impossible to suppose that the leading form of the question, or the improper assumption of said fact, might have misled the court or prejudiced the then plaintiff's case, it must be *held*, that the judgment of the trial court should not be reversed for such error.

5. RULING, *not Erroneous.* The court permitted the then defendant (the original plaintiff) to prove certain conduct and language on the part of the original plaintiff, had in the presence of the original defendant: *Held*, Under the circumstances of the case, that the ruling of the court was not erroneous.

6. PETITION *to Vacate Judgment; Evidence; No Error.* On the trial on a petition filed by the original defendant to vacate a judgment, and for a new trial because of the fraud and conspiracy of the original plaintiff and others in obtaining such judgment, the then plaintiff (original defendant) introduced as a witness one of the alleged conspirators. Afterward, the court permitted the then defendant (original plaintiff) to show that the then plaintiff's (original defendant's) counsel knew that such witness was near by at the time of the first trial, and that his evidence could have been procured if the then plaintiff (original defendant) had desired it. *Held*, Not error.

## *Error from Johnson District Court.*

THE opinion herein sufficiently states the nature of the action, and the facts. At the November Term, 1882, of the district court, defendant *Ewing* recovered a judgment against plaintiff *Fullenwider*, who brings it to this court for review.

*A. Bergen*, for plaintiff in error.

*W. A. Johnson*, and *H. L. Poplin*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: On September 13, 1879, a judgment was rendered by the district court of Anderson county, Kansas, in favor of Jesse Ewing, plaintiff, and against S. L. Fullenwider, defendant, for $1,000, damages adjudged to have accrued by

reason of the criminal conversation of the defendant Fullen-wider with the plaintiff's wife. This judgment was afterward affirmed by the supreme court. ( *Fullenwider v. Ewing*, 25 Kas. 69.) On October 13, 1880, the defendant, Fullenwider, filed a petition in the district court of Anderson county, under § 568 of the civil code, praying that said judgment should be vacated and that a new trial should be granted, and for such other and further relief as might be equitable. This proceeding to vacate such judgment and for a new trial was taken on a change of venue to the district court of Johnson county, where the same was tried before the court without a jury, which trial resulted in a judgment in favor of Ewing and against Fullenwider for costs, and the original judgment was permitted to remain undisturbed and in full force and effect. Fullenwider, as plaintiff in error, now brings the case to this court, and asks that the judgment of the district court of Johnson county shall be reversed.

The petition of Fullenwider asking that the original judgment should be vacated and a new trial granted, was based upon the alleged grounds that he had never been guilty of any criminal conversation with Ewing's wife, and that the original judgment was obtained against him by the fraud and conspiracy of Ewing and his wife and daughter, Laura J. Ewing, and by the perjury of Ewing and his daughter, and the subornation of perjury by Ewing. The evidence on the original trial, in Anderson county, and on the second trial, in Johnson county, was substantially the same, except that there was some additional evidence introduced on the second trial. At both trials Laura J. Ewing testified that she saw the defendant, Fullenwider, have sexual intercourse with her mother, Rebecca Ewing; and at both trials Jesse Ewing testified to several facts which tended to corroborate the testimony of his daughter; while at both trials Fullenwider testified that no improper intimacy ever existed, and no improper acts ever occurred between himself and Rebecca Ewing. There was some evidence at both trials tending to impeach the general character of Jesse Ewing for truth and

2—30 KAS.

veracity, and there was more of that kind of evidence on the second trial than on the first. There was also evidence at both trials showing that Mrs. Ewing stated, in the office of Justice Everline and in the presence of Fullenwider and others, that Fullenwider had previously had sexual intercourse with her, and that Fullenwider did not deny the same. On the first trial there was no evidence introduced tending to show any excuse for Fullenwider's failure to make any reply to Mrs. Ewing's charge; but on the second trial there was some evidence introduced tending to show that when Mrs. Ewing made this charge a trial was in progress in Justice Everline's court, and therefore that it would have been improper for Fullenwider to have made any reply. This evidence with reference to a trial being in progress when this charge was made, is in conflict with the evidence introduced on the first trial, and is in conflict with some o the oral testimony introduced on the second trial. Mrs. Ewing was not a witness on the first trial, and why she was not a witness at that time is not fully explained. She would have been a competent witness for either party at that trial. She was then staying in the city of Garnett, where the trial was had, and she was there during the entire progress of the trial; and the counsel for both parties, if not the parties themselves, knew of her presence in Garnett, and knew that her testimony could be procured. Ewing had procured a divorce from his wife at least one day, and perhaps two or three days, before the first trial, on account of her alleged adultery with Fullenwider; and therefore there was nothing at the time of the first trial to prevent her from being a competent witness for either party. On the second trial, her deposition was read in evidence, in which deposition is found the following statement, to wit:

"I here state that there never was any improper intimacy between Mr. S. L. Fullenwider and myself; nor did we ever have any sexual intercourse or improper conversation between us."

This is all she says upon this subject.

Perhaps it would not be improper to here state the dates of some of the principal facts in the case. The alleged adultery was committed about June 8, 1879. At this time, Laura J. Ewing was about ten and one-half years old. Soon thereafter, Ewing commenced his action for divorce against his wife, Rebecca Ewing, on the alleged ground of her adultery with Fullenwider, and also commenced his aforesaid action against Fullenwider for the alleged criminal conversation with his wife. The decree of divorce was rendered on September 10, 1879. The trial in the case for the alleged criminal conversation was had on September 11, 12, and 13, 1879, and the judgment in favor of Ewing and against Fullenwider in such case was rendered on September 13, 1879. This proceeding for the vacation of the judgment, and for a new trial, was commenced on October 13, 1880, and the trial thereon, (the second trial in the case,) was had on November 6, 1882. Laura J. Ewing was nearly fourteen years of age at that time. At the time of the second trial an affidavit of Laura J. Ewing was introduced in evidence, which tended to contradict her oral testimony introduced on the two trials. This affidavit was made by her after the first trial, and in such affidavit she stated that what she had previously testified to was not true; that she had not seen Fullenwider and her mother have carnal connection with each other; and that she testified as she did because of promises and threats made by her father. But on the second trial she again testified substantially to the same facts which she had testified to on the first trial; and further testified that she never knowingly signed or swore to the aforesaid affidavit; and that if she ever did in fact sign or swear to the same, it was procured from her through deceit and fraud. She says she signed a paper at about the time this affidavit purports to have been made; but she says she did not at the time believe the paper contained any such statements as are contained in this affidavit. She further says, that if she did in fact sign and swear to this affidavit, the same was not correctly read to her. The principal evidence tending to prove the alleged conspiracy on the

part of Ewing and his wife and daughter to procure said judgment against Fullenwider, was this affidavit of Laura J. Ewing and the said deposition of Rebecca Ewing. There was also some other evidence tending to prove the same thing. Mrs. Ewing has at some times stated one thing and at other times another thing, with reference to her alleged adultery with Fullenwider, and with reference to Ewing's prosecution for the same. Even before the first trial was had, she stated to a man by the name of Abraham Johnson that Ewing accused her of being guilty of adultery with Fullenwider; that Ewing intended to sue Fullenwider for the same, and that he was then teaching their daughter Laura J. Ewing what to testify to on the trial, and made threats and promises to both her and their daughter for the purpose of inducing them to unite with him in his proposed prosecution of Fullenwider for the alleged adultery with Mrs. Ewing. She said to Johnson that Ewing said he wanted to make a " raise " again, and that he would give her and Laura J. Ewing a portion of the gains if they would go into it. She said she was not guilty of the alleged adultery, and asked Johnson what she should do with respect to these matters. Johnson stated that the law would protect her, and that she could have Ewing " bound over." She said that if she could .see Fullenwider she would know better what to do, and asked Johnson to speak to Fullenwider about it. Fullenwider was a justice of the peace, as well as her supposed intimate friend. Afterward, Johnson fully informed Fullenwider with respect to this conversation which he had had 'with Mrs. Ewing; and he gave this information to Fullenwider prior to the commencement of the first trial; and Johnson was subpenaed as a witness on the part of Fullenwider, and was present as such witness at such trial, but was not called upon to testify. On the second trial, both Ewing and his daughter, Laura J., testified, orally, that there never was any conspiracy or fraud on their part, as was alleged and attempted to be proved by Fullenwider; and that Ewing

never taught his daughter what to testify to upon the first or the second trial.

I. It is evident from the record in this case that some person has actually committed perjury in the case, and this applies to both trials; but who committed the perjury, this court cannot tell. The members of this court have never seen the witnesses, nor heard them testify, and know nothing about them except what they have seen on paper. The question as to who told the truth and who testified falsely, was presented to a jury of the county in which all the witnesses and parties at the time resided; and the court and jury, after seeing the witnesses and the parties and hearing them testify, were much more competent to determine as to who told the truth and who testified falsely, than this court. On the second trial, the court which then tried the case also saw the parties and the principal witnesses, to wit, Jesse Ewing, Laura J. Ewing, and S. L. Fullenwider, and heard them testify; and that court was also, for these reasons, much more competent to determine as to who told the truth and who did not tell the truth, than this court. If this court should reverse the finding and judgment rendered by the trial court on the second trial on the evidence then introduced, it would virtually upon mere paper evidence say that one jury and two able and experienced courts, which saw the principal witnesses and heard them testify, were mistaken with regard to the facts; and this it would have to say merely from the evidence as it appears on paper, and without ever having seen any of the witnesses or the parties to the case. We cannot retry a case upon conflicting paper evidence, and reverse the decision of the district court upon the facts, where the district court has heard the case and found the facts almost exclusively upon parol evidence. For this reason, among others, we cannot say that the trial court erred with regard to the facts of the case.

There are some technical questions, however, which counsel for plaintiff in error, Fullenwider, present to this court, which we shall now proceed to consider.

II. On the second trial, Fullenwider offered to introduce

in evidence, as the *affidavit* of Laura J. Ewing, a paper which counsel have generally called an affidavit, but which had previously been taken as the deposition of Laura J. Ewing; but counsel for Ewing objected to the introduction of this paper upon the ground, among others, that Laura J. Ewing was then present in court under a subpena, and that her oral testimony could be taken in the case. The court sustained the objection, and Fullenwider excepted.

We think the decision of the court was correct. The deposition of a witness can never be used as evidence, except where the oral testimony of the witness cannot be procured, or where the oral testimony of the witness is not required. (Civil Code, §§ 246, 360.) And an affidavit can never be used as evidence where a deposition cannot be so used; and in many cases an affidavit cannot be used where a deposition may be used. It will be remembered that this proceeding is not a mere *motion* to vacate a judgment, or for a new trial; but it is a proceeding for such purpose, founded upon a *petition* filed more than a year, and after several terms of the court had intervened, after the original judgment was rendered, and is in the nature of an action. In one sense it may be considered as a mere incident to the original action, or as a proceeding belonging to and growing out of the original action; but in another sense it must be considered as an action itself. In the case as it was originally commenced, Jesse Ewing was the plaintiff and S. L. Fullenwider was the defendant; but in the proceeding, as it was prosecuted upon the *petition* to vacate the original judgment and for a new trial, S. L. Fullenwider was the plaintiff and Jesse Ewing was the defendant; and such proceeding upon such petition partakes, to a very great extent, of the nature of a suit in equity to vacate or set aside a judgment for fraud or otherwise; and if the proceeding itself does not arise to the grade or dignity of an action, it partakes, to a very great extent, of the nature of an action. In § 4 of the civil code, it is stated that "an action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right,

the redress or prevention of a wrong, or the punishment of a public offense." Does not the present proceeding come within this definition? Fullenwider had a right in the original action to have the same tried fairly and without deceit, or fraud, or perjury. That right, he alleges, was violated, and by means of this proceeding he seeks redress. Does not this answer the description of an action? But whether this proceeding is an action, or a mere special proceeding in another action, we think it partakes of the nature of an action, and should be tried by legal evidence, just as real actions are tried, and not upon affidavits, as is usually the case with respect to mere motions. Affidavits are the poorest kind of evidence, and should probably never be used, except upon the hearing of motions or for the verification of pleadings or other papers. But the affidavit in the present case, or the deposition, or whatever it may be called, was in fact introduced and read in evidence on this same trial. After its exclusion, as above stated, it was at a subsequent period of the trial introduced and read in evidence for the purpose of impeaching the testimony of Laura J. Ewing.

III. The plaintiff in error, Fullenwider, also claims that the exclusion of a certain letter, purporting to have been written by Thomas J. Ewing, was error. But the ruling of the trial court upon this matter was so manifestly and unquestionably correct, we think it is unnecessary to say anything further with reference thereto.

IV. While Ewing was testifying as a witness, his counsel asked him the following question: "Had you ever spoken to anyone about bringing suit against Fullenwider for criminal conversation with your wife until after you had separated from your wife and it was made known generally in the neighborhood that Fullenwider had debauched your wife?" This question was objected to by Fullenwider for incompetency, and because it assumed as a fact what had not been proved, and was leading. The court overruled the objection, and permitted the question to be answered; and the witness answered, "I had not."

We think the court erred in permitting the question to be answered; but under the circumstances of the case, the error was wholly immaterial. It must be remembered that the case at this time was not tried before a jury, but was tried by the court itself, which could not well be misled by leading questions, or by assumptions of fact which had not yet been proved, or which should not have been proved. Besides, the question was not asked for the purpose of obtaining evidence of any fact, except that Ewing had not, by the use of language or words, entered into a conspiracy with his wife or daughter, or anyone else, for the purpose of prosecuting Fullenwider. It was evidently so intended by Ewing's counsel, and was so understood by the court and the witness, and it was not intended by such counsel, or understood by the court or witness, to be for any other purpose; and for such purpose the question was certainly competent. Ewing answered the question only to this extent; simply answered, "I had not," and said nothing with respect to the other matters contained in the question. Taking the whole of the case together, and considering what was in fact proved, it is impossible to suppose that the leading form of the question, or the supposed unwarranted assumptions contained therein, might have misled the court or prejudiced Fullenwider's case. Therefore, the very slight error in permitting this question to be answered will not authorize a reversal of the decision and judgment of the trial court.

V. The plaintiff in error also complains that the court permitted evidence to be introduced with reference to what Jesse Ewing said and did at a particular time and place, prior to the commencement of the original action. This was not error. Fullenwider was present at the time, and the evidence was probably introduced for a twofold purpose: First, to show that Ewing was sincere in prosecuting Fullenwider for what he (Ewing) supposed to be a real wrong; and, second, to show that Fullenwider did not at the time act as though he considered himself as really an innocent man, and Ewing as the only man who was tainted with moral obliquity;

or was perpetrating, or about to perpetrate, some moral wrong. We think the evidence was competent for both purposes; but if it was competent for either purpose, it was admissible.

VI. The plaintiff in error also complains of the trial court in permitting Ewing's counsel to show that Fullenwider's counsel knew of the whereabouts of Mrs. Ewing at the time of the first trial, and knew that they could procure her testimony if they so desired. We do not think that this was error. Fullenwider, as before stated, introduced the deposition of Mrs. Ewing on the second trial, and it was not erroneous for the court then to permit Ewing to show that Fullenwider could have procured her testimony on the first trial if he had so desired. Probably, however, the evidence complained of did not affect the decision of the court in the slightest degree. It was a matter of but very little consequence.

The judgment of the court below will be affirmed.

All the Justices concurring.