No. 19,166.

EMELIA NEW, and ROBERT H. CLOGSTON, as Trustee, etc., of EMELIA NEW, a Convict, *Appellees*, v. J. A. SMITH, *Appellant*.

### SYLLABUS BY THE COURT.

1. EJECTMENT — *Fraudulent Deed — Evidence — Transcript of Stenographer's Notes Competent.* In an action to recover possession of certain real estate on the ground that a deed therefor had been procured by fraud and that the defendant took his title with notice of such fraud the plaintiff testified to transactions and communications had personally by her with one of the defendant's grantors who was charged with the fraud, such grantor being present as an attorney in the case. At a subsequent trial, such grantor having died, the plaintiff was, on the defendant's objection, precluded from testifying to the matters covered by such former testimony, and thereupon offered in evidence the stenographer's transcript thereof. *Held*, that an objection thereto on the grounds of incompetency and because it concerned transactions and communications had personally with a deceased grantor from whom the defendant claimed title was properly overruled.

2. SAME. The statute permitting the use of the stenographer's transcript of testimony (Gen. Stat. 1909, § 2407) does not restrict such use to the limitations which attach to a deposition under sections 337 and 358 of the civil code.

3. EJECTMENT—*Two Defenses—Not Inconsistent—Election.* The defendant claimed title by virtue of his purchase, and also claimed the right to possession by reason of having paid off certain incumbrances which had been placed thereon by the plaintiff. Upon motion of the plaintiff the defendant, over his protest, was required to elect between these defenses and elected to stand upon his claim of title. At a subsequent trial he was held bound by such previous election. *Held*, that the two defenses are not inconsistent and the election was improperly required, and for that reason as well as because it was compulsory the defendant should not have been held bound thereby.

4. SAME—*Transaction Did Not Work a Merger of Title.* Such payment did not as a matter of law work a merger of the interests of the mortgagees and the owner—merger under the circumstances being optional with the owner.

New v. Smith.

5. SAME—*Payment of Mortgages—Subrogation to Rights of Mortgagee.* Although it was determined that the defendant took his title with notice of facts sufficient to put him upon inquiry leading to knowledge of the fraud of one of his grantors so that he must yield up possession and lose what he paid for the land, still having paid off certain mortgages placed thereon by the plaintiff the latter can not oust him from possession until she has accounted to him for the amount thus paid, his right of subrogation being similar to that of a mortgagee in possession and based upon the same principles of equity and fair dealing.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed January 9, 1915. Modified.

*T. A. Kramer,* of El Dorado, for the appellant.

*John Stowell,* of Seneca, *Robert H. Clogston, Lew E. Clogston,* both of Eureka, *E. D. Woodburn, F. T. Woodburn,* both of Holton, and *A. E. Crane,* of Atchison, for the appellees.

The opinion of the court was delivered by

WEST, J.: This is in form an action in ejectment to recover title and possession of a two-hundred-and-forty-acre tract of land in Greenwood county. The defendant in his answer denies the allegations of the petition and admits his possession of the real estate. Beneath the surface of these pleadings the real issue is the validity of a conveyance from the plaintiff, Emelia New, to E. C. Schultz, the wife of James Schultz, formerly an attorney at Eureka, and a conveyance by E. C. Schultz and husband to the defendant, J. A. Smith, the claim of the plaintiff being that her deed was procured by the fraud of James Schultz, and that J. A. Smith took with knowledge or with notice of sufficient facts to have put him upon inquiry leading to knowledge of such fraudulent transaction. When the case was reached for trial the defendant's counsel, in his statement to the jury, said, among other things, that his client, Smith, took his deed in good faith, having paid good money for it, and went into possession,

and afterwards made improvements and paid the taxes; that he paid off the three mortgages upon the land out of his own funds; whereupon the plaintiff moved that the defendant be required to elect whether he would rely upon his claim of title or upon his claim of being a mortgagee in possession, and being required so to do the defendant under protest elected to stand upon the former. At a subsequent trial the court ruled that he was bound by his previous election. The jury returned a verdict in favor of the plaintiff, and from the judgment thereon the defendant appeals, and assigns many alleged errors touching rulings upon the admission of evidence in giving and refusing instructions, in requiring the defendant to elect, and in refusing to consider his rights as a mortgagee in possession. Upon the last trial the plaintiff was called as a witness and asked if after she was brought to Eureka under arrest for the murder of her former husband she saw James Schultz, and upon objection was forbidden to state what conversation she had with him. One of the plaintiff's counsel testified that before the former trial Mrs. New's testimony was taken, and that on that trial Mr. Schultz was present in the court room and appeared as one of the attorneys in the case; that Mr. Smith, the defendant, was also present at that time; that Mr. Schultz was not sworn and did not testify on that trial. Then the counsel offered a transcript of this testimony in which the witness stated that she saw Mr. Schultz the day she was brought to Eureka under arrest; that he came to visit her and said a few words; that after she was taken to the jail at Wichita Mr. Schultz visited her there about three times, during one of which visits she signed a paper, which he said was to protect her property, but she did not know at the time what the paper was; that he called Mary Williams in the hall to come in and sign the paper. There was a tall slender man there. Mr. Schultz then said, "You signed this paper, Mrs. New?" to which she answered, "Yes." That she at no time made an agreement with him that he was

to have her farm if he would defend her in the criminal case or had any agreement as to what she was to pay him for his services. When this transcript was offered in evidence Mr. Schultz was no longer alive, and the defendant contends that it was error to admit this testimony, and that under the statute which provides that the transcript of the stenographer's notes may be introduced in evidence under like circumstances and with like effect as the deposition of the witness, Mrs. New, being present in court could not have testified by deposition, and that it was not competent because in respect to a transaction had personally with a deceased person prohibited by section 320 of the code as amended by chapter 229 of the Laws of 1911.

The defendant offered in evidence the record of all mortgages that were on the real estate when deeded to Mrs. Schultz and to the defendant; also assignments, releases and forclosure proceedings concerning them, and offered to show that such mortgages were paid by the defendant. These were excluded from consideration on the theory that he was bound by his former election to stand on his claim of title.

It is earnestly contended by the defendant that he not only had a right to have this evidence received and considered, but that his payment of the mortgages with his own money gave him the right to be subrogated to that extent and to be treated as a mortgagee in possesion. To this the plaintiff replies that having procured the land by fraud, or rather that having taken it with notice of the fraud by which Schultz procured it to be conveyed to his wife, the defendant is barred from consideration as a mortgagee in possession.

The matter of election must be determined by the rightfulness of the order requiring it in the first place, for it was then made under complusion and protest, and hence the defendant could not be held bound by it on a subsequent trial on the mere ground that having once elected he must stand by such election. The very

word signifies a free choice, and an election by compulsion is an anomaly. (3 Words & Phrases, p. 2336.) An election which involves no freedom of choice is known as Hobson's choice, which is defined as "A choice without an alternative." (Webster's New International Dictionary, 1911 ed.) It must follow, therefore, that an involuntary election in obedience to the order of the court was not such a choice as would bind the party on a subsequent trial unless for the sole reason that it was rightfully ordered at the first trial. But when one defends an action for the recovery of land on the grounds that he has a paper title which he desires held good, and is also in possession of mortgages on such land which he has paid, we can see nothing necessarily irreconcilable about the two defenses. It is proper in an action for specific performance to plead in the alternative and ask for damages for nonperformance. (*Henry v. McKittrick*, 42 Kan. 485, 22 Pac. 576; *Naugle v. Naugle*, 89 Kan. 622, 132 Pac. 164.) And it is quite possible for one to purchase incumbered land, the title to which may be uncertain, and by purchasing the incumbrance hold both as owner and mortgagee, the matter of merger usually being one of choice and not one of compulsion. (*Loan Association v. Insurance Co.*, 74 Kan. 272, 86 Pac. 142; *Carson v. Fulbright*, 80 Kan. 624, 103 Pac. 139; *Williams v. Bricker*, 83 Kan. 53, 58, 59, 109 Pac. 998; *Zuege v. Mortgage Co.*, 92 Kan. 272, 140 Pac. 855.)

As to the admissibility of the transcript of the evidence, aside from the competency of the witness, it should be observed that when this testimony was originally offered Mr. Schultz was present as one of the attorneys in the case, although he did not testify. Mrs. New had then testified about her interviews with Mr. Schultz at one of which she had signed and acknowledged a paper which turned out to be a deed, and about other transactions with him when he acted as her attorney. This was followed by a cross-examination by her counsel, covering in detail her dealings with Mr.

New v. Smith.

Schultz after his motion that her examination in chief be stricken out was overruled. It is contended that the only basis for admitting this transcript is the statute providing that a transcript of the court stenographer's notes of one's testimony, properly verified and certified, may be introduced under like circumstances and with like effect as the deposition of such witness. (Gen. Stat. 1909, § 2407.) The circumstances under which depositions may be used are set forth in sections 337 and 358 of the civil code, an essential one being that the witness is not and can not be in attendance. The witness was present and placed on the stand, but an objection to testimony by her was sustained, and plaintiffs' counsel argue that having been deprived of her evidence by this objection it was proper to introduce the transcript of her former testimony. The objection was on the ground of the incompetency of the evidence and also the incompetency of the witness to testify concerning a transaction with a deceased person, and it does not appear on which ground it was sustained. The fact that the transcript was received indicates, however, that it was on the ground of the present incompetency of the witness. Of course, aside from this the transcript was properly received like evidence of any other statement made by the plaintiff in the presence and hearing of Mr. Schultz and undenied by him. *Fullenwider v. Ewing,* 30 Kan. 15, 1 Pac. 300, is cited. There on the second trial of a case a deposition taken on a former trial was offered as the affidavit of a witness, and it was held that this was properly rejected, the witness being present in court. It was also held proper to prove certain conduct and language on the part of the original plaintiff had in the presence of the original defendant. See, also, *C. K. & W. Rld. Co. v. Prouty,* 55 Kan. 503, 40 Pac. 909, to the effect that it is error to admit the deposition of a witness who resides outside the county, but who is present in court and ready and willing to testify.

Before the enactment of section 2407 it had been held that the stenographer's notes of evidence formerly taken could be read in evidence, and the statute makes it proper to introduce the transcript made and certified by him. In *The State v. Stewart*, 85 Kan. 404, 116 Pac. 489, the testimony of a witness voluntarily given in the preliminary examination of the charge for which the accused was on trial was held admissible, the accused having originally had full opportunity to cross-examine, and the direct testimony of the witness having become unavailable by reason of his claiming his statutory privilege of withholding the same. The previous decisions were referred to and followed. It was said that this admissibility did not depend so much on the presence or the availability of the witness as on the availability of the testimony; that the testimony of Stewart, the husband of the defendant, was as unavailable as if he were over the state line. The case of *Pratt v. Patterson*, 81 Pa. St. 114, was cited, in which both parties to an action having testified and the verdict having been set aside and one of the parties having died and his executor having been substituted, it was held competent at the next trial to read the testimony given by the deceased at the former trial. Section 337 of the code provides that the deposition of a witness may be used only when he is a nonresident or absent from the county or unable to attend court or dead. Section 2407 has reference not so much to the matter of using a deposition in the absence of witnesses as using a transcript of the stenographer's notes instead of reading them, and while it provides that such transcript may be introduced under like circumstances and with like effect as a deposition, it does not restrict such use to instances in which depositions only may be used. In other words, the object of section 2407 is not to confine transcripts to the limits applied to depositions, but to provide a more convenient way to use testimony formerly taken than by reading the notes which would be

New v. Smith.

unintelligible to the jury, and which reading might in many cases be tedious and unsatisfactory.

The question remains whether or not this testimony was incompetent because it related to a transaction had by the plaintiff with a deceased person "where either (formerly the "adverse" party) party to the action claims to have acquired title directly or indirectly from such deceased person." (Laws 1911, ch. 229, § 1.) The defendant claimed to have acquired title from the wife of the deceased, but as the husband joined in the deed he could well claim to have acquired title either directly or indirectly from him. When this testimony was originally given it did not relate to any transaction or communication had with a person then deceased and hence it was not barred by the statute invoked by the defendant. At the subsequent trial the testimony by the witness was excluded by reason of this statute, and then it became as unavailable as if Mrs. New had been absent in another state or helpless on a bed of sickness, the situation thus approaching very nearly the one presented in *The State v. Stewart,* supra, so nearly, indeed, that the same rule must be held to apply. Authorities are cited which would lead to a different conclusion and which go to the extent of holding that Mrs. New should be deemed to have been actually testifying when her former testimony was read, but we are not persuaded or convinced by their reasoning. In *Collins v. McGuire,* 76 App. Div. 443, 78 N. Y. Supp. 527, it was held by the appellate division of the supreme court of New York that the competency of a witness depends upon the facts as they exist when his testimony is given. A defendant had testified on his own behalf to personal transactions had with the plaintiff, who died before being called as a witness, and his administrator was substituted and it was sought to strike out the evidence under a statute similar to ours, but the motion was denied and this ruling was affirmed, following *Comins v. Hetfield,* 80 N. Y. 261. It is suggested

that when this evidence was originally given it was with the understanding that Mr. Schultz should be allowed to testify concerning the same matters, but as a demurrer was sustained to the plaintiff's evidence the opportunity did not arise in that trial; and that the objection that it covered a conversation between attorney and client was waived in view of the understanding. But this can not mend matters for the defendant for the statute does not preclude the client but only the attorney from giving such conversation. (Civ. Code, § 321, subdiv. 4.)

It is insisted that the court erred in sustaining an objection to questions in substance whether or not the defendant when he bought the land believed that the plaintiff had in good faith parted with all her interest in it. It was competent to show his motive, belief and state of mind, and no one could know so well as he what they were. (*Baker v. Railway Co.*, 85 Kan. 263, 116 Pac. 816.) But he was permitted to testify that he did not then know there was any claim made by Mrs. New of fraud or failure of consideration, and that he had never heard anything about any controversy as to how Schultz got the deed. No offer was made to show what was indicated by these questions and no affidavit or showing thereof was produced in support of the motion for a new trial, and it can not be said that material prejudice appears as to the ruling in question. (*Clark v. Morris,* 88 Kan. 752, 129 Pac. 1195; *Caldwell v. Modern Woodmen,* 89 Kan. 11, 130 Pac. 642; *Cheek v. Railway Co.,* 89 Kan. 247, 131 Pac. 617; *McIntosh v. Oil Co.,* 89 Kan. 289, 131 Pac. 151; *Treiber v. McCormack,* 90 Kan. 675, 136 Pac. 268; *Leavens v. Hoover,* 93 Kan. 661.

We have examined the instructions given and refused with reference to the complaints made concerning them and to ascertain whether the jury were properly charged, and while now and then an expression might have been bettered or properly omitted, it appears that the issues were fairly and sufficiently presented and no

material error was committed either in those refused or in those given. The only remaining point requiring consideration is the rightfulness of the defendant's claim to be treated as a mortgagee in possession. This term is a familiar one, but it bears no talismanic charm or potency to confer benefits regardless of the dictates of fairness and equity; on the contrary, it is an expression used to describe a situation in which those very dictates demand that one be made whole for what he has benefited an estate before being required to yield it up to another who would thereby enjoy an unearned advantage. When Mrs. Schultz took her deed to the land it was incumbered, and these incumbrances remained when Mr. Smith purchased the land. They represented money loaned to a former owner and never paid by such owner, so that the utmost title Mrs. New could ever rightfully claim is the equity or the fee burdened with these incumbrances. These Mr. Smith has paid, not on account of or at the behest of the plaintiff, but presumably because they had to be paid to save the land, which he claimed to own. Is there any reason why if he should be compelled to turn the land over to Mrs. New he should also present her with the amount of these mortgages? The only possible reason assigned is that he is tainted with the fraud by which the title was procured from her. But this is not an action for punitive damages. It is one to set aside a deed, and regain possession of land on which he has expended, under color and claim of title, enough money to clear such title from all the incumbrances which his adversary voluntarily placed upon the land. He is not the actor in this drama, but the party assailed, and if his assailant recovers everything which he ever procured from her directly or indirectly it would seem enough. And to this effect are the authorities. In *Hofman v. Demple*, 52 Kan. 756, 35 Pac. 803, the defendant had furnished liquor to make the husband of the plaintiff drunk for the purpose of inducing him to convey the homestead, whereupon the husband pro-

cured the wife's signature by duress, and it was held that the plaintiff had no right to recover the land freed from an incumbrance cleared by the defendant. True, the grantors had acquiesced for more than a year and a half, but this was not deemed sufficient to bar the recovery of the land, and it was stated to be inequitable that more should be recovered. In *Stouffer v. Harlan,* 68 Kan. 135, 74 Pac. 610, many decisions were reviewed, and it was said that whatever may be the historical source of the rule, it should be acted upon except where one has acquired possession of property "under such circumstances that it would be inequitable to permit him to assert a right under it." (p. 145.) In *Walters v. Chance,* 73 Kan. 680, 685, 85 Pac. 779, it was said that if one obtain possession by force, intimidation, deceit or fraud, a court of equity will not permit him to profit thereby. Here there is no claim that the defendant obtained possession by fraud committed by him upon Mrs. New—only that he took his title with the knowledge or means of knowledge that one of his grantors had defrauded her. While this may be good ground for requiring him to give up what he obtained and to lose all he paid for it, no reason is apparent why in addition he should lose what he had paid out to clear the land from liens placed thereon by the plaintiff. Of course it is not and can not be claimed that the defendant is a mortgagee in possession—only that he should be treated as if he were. More correctly stated, the question is, Should he be subrogated to the rights of the creditors whose liens he satisfied? As said in *Olson v. Peterson,* 88 Kan. 350, 128 Pac. 191: " 'Subrogation is a creature of equity, invented to prevent a failure of justice' " (p. 361) and it was there said to be broad enough to include " 'every instance in which one party is required to pay a debt for which another is primarily answerable, and which, in equity and good conscience, ought to be discharged by the latter.' " (p. 361.) The doctrine of subrogation or equitable assignment was considered in *Deposit Co. v. City of Stafford,* 93 Kan.

New v. Smith.

539, 144 Pac. 852.    (See, also, *Young & Co. v. Ward et al.,* 115 Ill. 264, 3 N. E. 512; and *Arnold v. Hoschildt,* 69 Minn. 101, 71 N. W. 829.)    As a matter of simple fairness and in line with the essential principles of equity we hold that the defendant should not be ousted until made whole for the incumbrances which he has satisfied.

Litigation resulting from the homicide of Joseph New is no new thing in this court.    (*Dobbs v. The State,* 62 Kan. 108, 61 Pac. 408; *Smith v. Becker,* 62 Kan. 541, 64 Pac. 70; *Dobbs v. The State,* 63 Kan. 321, 65 Pac. 658; *New v. Smith,* 68 Kan. 807, 74 Pac. 610; *New v. Smith,* 73 Kan. 174, 84 Pac. 1030; *New v. Smith,* 86 Kan. 1, 119 Pac. 380.)

In order that this litigation may be ended, and in view of the circumstances shown, the amount due the defendant on account of the mortgages paid by him should be ascertained and satisfied before the plaintiff is let into possession.    If there is a claim for rents and profits there is no reason why proper pleadings and proceedings can not be filed and had to close the entire controversy.

Finding no material error except in the one respect indicated, the case is remanded with directions to modify the judgment in accordance herewith.