(804 P.2d 1026)

No. 64,758

CITY OF ARKANSAS CITY, KANSAS, CITY OF HESSTON, KANSAS, and SOUTHWEST NATIONAL BANK, WICHITA, KANSAS, *Appellees,* v. A. SCOTT ANDERSON, E. SYLVIA ANDERSON, K.M. LAND CO., and LOUISBURG GRAIN, INC., *Defendants,* and T.J. KLINE, INC., and GUARANTY SERVICE CORPORATION, INC., *Appellants.*

Opinion filed January 18, 1991.

*Roy S. Bennett, Jr.,* and *David K. Fromme,* of Shawnee, for appellants.

*Thomas E. Ruzicka* and *Steven B. Moore,* of Watson, Ess, Marshall & Enggas, of Olathe, for appellees.

Before GERNON, P.J., ELLIOTT, J., and TERRY L. BULLOCK, District Judge, assigned.

GERNON, J.: This is an appeal by T.J. Kline, Inc., (Kline) and Guaranty Service Corporation, Inc., (Guaranty) from the trial court's ruling granting summary judgment to the plaintiffs, City of Arkansas City, City of Hesston, and Southwest National Bank, Wichita, Kansas.

The facts will be repeated only as necessary for an understanding of the rulings in this appeal. This appeal is a follow-up to the Kansas Supreme Court decision in *City of Arkansas City v. Anderson*, 243 Kan. 627, 762 P.2d 183 (1988), *cert. denied* 109 S. Ct. 2449 (1989). The facts are fully set out therein.

The Kansas Supreme Court ruled that, as a matter of law, "overwhelming" evidence established that A. Scott Anderson and E. Sylvia Anderson, the appellants' predecessors in title, had fraudulently conveyed real estate to their closely held corporation, K-M Land Co. 243 Kan. at 638. This appeal involves the validity of K-M Land Co.'s subsequent conveyance of the same real estate to appellant Kline and Kline's subsequent conveyance and assignment to appellant Guaranty.

In 1984, the Andersons were defendants in lawsuits brought by the City of Arkansas City, the City of Hesston, and Southwest National Bank. Shortly before trial in one of the lawsuits, the Andersons signed articles of incorporation for K-M Land Co. The Andersons were the sole stockholders and directors of K-M Land Co. They then signed and executed a warranty deed conveying their undivided 1/4 interest in and to certain valuable tracts of land at 119th and Antioch Streets in Johnson County to K-M Land Co.

After judgment was taken against the Andersons and others for over $2,600,000 in the Cowley County case, the Andersons, as directors of K-M Land Co., approved the sale of the land to Kline for a price of $4,000,000.

In March of 1985, the John Sims Trust was created to acquire and hold Missouri real estate for K-M Land Co. The Andersons and their children were beneficiaries of the trust. On March 14, 1985, K-M Land Co. conveyed to Kline part of the Johnson County tract previously conveyed by the Andersons to K-M Land Co. K-M Land Co. received $1,053,197 as its share of the proceeds of this sale. On

the same day, Kline conveyed 200 acres of McDonald County, Missouri, land to the John Sims Trust.

The plaintiffs in this suit sought to have the conveyances from the Andersons to K-M Land Co. and another corporation set aside, annulled, and held to be void. The theory of the suit was that the conveyances were made "with the intent to hinder, delay and defraud their creditors . . . in violation of K.S.A. 33-102." The trial court found in the original suit that the conveyances were not fraudulent. In an unpublished opinion No. 60,359 filed March 3, 1988, the Court of Appeals, with Judge Elliott dissenting, agreed with the trial court. The Supreme Court reversed and found that there was "overwhelming" evidence of fraud.

After the Kansas Supreme Court ruled that the conveyances were fraudulent, the case was remanded with directions, and the court subsequently ruled on the question of whether Kline and Guaranty were bona fide purchasers for value.

Before the sale to Kline, a representative of the sellers applied for title insurance with Stewart Title Associates of Kansas City, Inc. (Stewart). Stewart issued a title insurance commitment on the real estate on September 6, 1984. The initial title insurance commitment predated the judgments against the Andersons in Cowley and Harvey counties and, therefore, did not mention those lawsuits. The first title commitment was sent to all of the sellers and to Kline.

On November 1, 1984, Stewart issued an updated title commitment. This commitment was issued a few days before the judgments had been entered against the Andersons in Cowley and Harvey counties and did not reflect those judgments.

On December 21, 1984, the Harvey County and Cowley County judgments against the Andersons were registered in Johnson County.

On or before March 5, 1985, Stewart issued its third title commitment relating to the sale of the real estate. The third title insurance commitment added the following exception to coverage:

"[T]he policy . . . to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

. . . .

"16. Prior to June 15, 1984 A. Scott Anderson and E. Sylvia Anderson owned an undivided 1/4 interest in the subject property.

"and:

"On June 15, 1984 A. Scott Anderson and E. Sylvia Anderson conveyed their interest in the subject property to K-M Land Co.

"and:

"Subsequent to this conveyance to K-M Land Co., two transcripts of foreign judgment against A. Scott Anderson and E. Sylvia Anderson, *et al.*, were registered in Johnson County, Kansas, said transcripts being Suit Numbers 136732 and 136733.

"and:

"*Please furnish proof that the transfer of Andersons' interest in the subject property to K-M Land Co. was a bona fide transfer for value.*" (Emphasis added.)

After Stewart issued the third title insurance commitment containing the fraudulent conveyance exception, an attorney representing Stewart, Tonia Shelton, had a telephone conversation with Bruce Moore, an attorney representing the Andersons and K-M Land Co. Mr. Moore told Ms. Shelton that the transfer from the Andersons to K-M Land Co. was for estate planning purposes. Mr. Moore's explanation regarding the purpose of the transfer was insufficient to permit Stewart's underwriters to allow Stewart to issue a title insurance commitment without the fraudulent conveyance exception.

The record indicates that neither Kline nor Guaranty conducted any investigation of the bona fides of the Andersons' conveyance to K-M Land Co. A. Scott Anderson, one the principals of K-M Land Co., then paid for and obtained the title insurance commitment from Security Title, which did not exclude coverage for the Andersons' "fraudulent conveyance" to K-M Land Co.

The record supports a finding that T. J. Kline, the owner of Kline, had received a copy of the Stewart title commitment containing the fraudulent conveyance exception and knew that Stewart had requested proof that the transfer was a bona fide transfer for value.

Despite the questions involved, the sale was closed in March of 1985. Shortly thereafter, the Andersons executed affidavits stating that, because of their financial condition, they could not satisfy judgments taken against them in Cowley County and Harvey County.

The judgment lienholders, City of Arkansas City, City of Hesston, and Southwest National Bank, filed a motion for summary judgment on the issue of whether Kline and Guaranty were bona fide purchasers of K-M Land Co.'s interest in the real estate. The moving parties filed a memorandum in support of their motion for summary judgment pursuant to Rule 141 (1990 Kan. Ct.

R. Annot. 110), with separately numbered paragraphs and precise references to the record as it then stood.

The response on behalf of Kline and Guaranty failed to set forth in separately numbered paragraphs a statement whether each factual contention was controverted or uncontroverted. Instead, at the hearing on the motion for summary judgment, appellants sought to present lengthy depositions of several individuals involved in the controversy, and numerous exhibits were offered. The trial court stated that the appellants' attempt to defeat summary judgment was in a manner inconsistent with Supreme Court Rule 141 and refused to permit the appellants' counsel to introduce the depositions.

The trial court granted the motion for summary judgment and found that Kline and Guaranty were not bona fide purchasers of the real estate. The court found that Stewart's third title insurance commitment, which contained the fraudulent conveyance exception, placed the appellants on notice. The court further ruled that the investigation performed by an employee of Security Title was not performed by Security as an agent of Kline or Guaranty and, further, found that Kline and Guaranty's failure to take any action to investigate the nature of the title was not consistent with their legal obligation to investigate title. Kline and Guaranty appeal.

On appeal, three issues are raised by the parties:

(1) Did the trial court err by granting summary judgment to the plaintiffs, ruling as a matter of law that Kline and Guaranty were not bona fide purchasers?

(2) Did the trial court err by rejecting the defense based upon equitable estoppel asserted by Kline and Guaranty?

(3) Did the trial court err by refusing to grant equitable protection in favor of Kline and Guaranty to the extent of the consideration paid?

SUMMARY JUDGMENT

Kline and Guaranty argue that the trial court erred by granting summary judgment in that a genuine issue of material fact remained as to whether they qualified as bona fide purchasers for value.

K.S.A. 1989 Supp. 60-256 governs motions for summary judgment and provides in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." K.S.A. 1989 Supp. 60-256(c).

Our appellate courts have addressed the standards for granting summary judgment on numerous occasions.

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. 303, 306, 756 P.2d 416 (1988).

"When a motion for summary judgment is filed, a mere surmise or belief by the trial court, no matter how reasonably entertained, that a party cannot prevail upon a trial will not justify refusing that party his day in court." *Hunt v. Dresie,* 241 Kan. 647, 653, 740 P.2d 1046 (1987).

However, not every factual dispute will preclude entry of summary judgment.

"In order to preclude summary judgment, the facts subject to dispute must be material to the issues to be determined. . . . 'An issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A feigned or imaginary issue is not a genuine issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of a material fact.' " *Miller v. Foulston, Siefkin, Powers & Eberhardt,* 246 Kan. 450, 471-72, 790 P.2d 404 (1990) (quoting *Ruebke v. Globe Communications Corp.,* 241 Kan. 595, 605, 738 P.2d 1246 [1987]).

In addition, Kansas Supreme Court Rule 141 governs certain procedural aspects of summary judgment motions and provides:

"No motion for summary judgment shall be heard or deemed finally submitted for decision until:

"(a) The moving party has filed with the court and served on opposing counsel a memorandum or brief setting forth concisely in separately numbered paragraphs the uncontroverted contentions of fact relied upon by said movant (with precise references to pages, lines and/or paragraphs of transcripts, depositions, interrogatories, admissions, affidavits, exhibits, or other

supporting documents contained in the court file and otherwise included in the record); and

"(b) Any party opposing said motion has filed and served on the moving party within twenty-one (21) days thereafter, unless the time is extended by court order, a memorandum or brief setting forth in separately numbered paragraphs (corresponding to the numbered paragraphs of movant's memorandum or brief) a statement whether each factual contention of movant is controverted, and if controverted, a concise summary of conflicting testimony or evidence, and any additional genuine issues of material fact which preclude summary judgment (with precise references as required in paragraph [a], *supra*).

"The motion may be deemed submitted by order of the court upon expiration of twenty-one (21) days, or expiration of the court ordered extended period, after filing and service on opposing counsel of the brief or memorandum of moving party notwithstanding the failure of the opposing party to comply with paragraph (b), *supra*. In such cases the opposing party shall be deemed to have admitted the uncontroverted contentions of fact set forth in the memorandum or brief of moving party. In determining a motion for summary judgment the judge shall state the controlling facts and the legal principles controlling the decision in accordance with Rule 165." (1990 Kan. Ct. R. Annot. 110).

The rules concerning fraudulent conveyances and bona fide purchasers are well settled. The general rule is that a fraudulent conveyance is void. K.S.A. 33-102 provides:

"Every gift, grant or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment or execution, made or obtained with intent to hinder, delay or defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the person or persons who shall purchase such lands, tenements, hereditaments, rents, goods or chattels, shall be deemed utterly void and of no effect."

However, a bona fide purchaser for value will obtain good title, notwithstanding an earlier fraudulent transfer. *Sparks v. Bank*, 68 Kan. 148, 152, 74 Pac. 619 (1903). " 'One who has constructive notice of an outstanding title or right is not a bona fied purchaser.' " *Federal Savings & Loan Ins. Corp. v. Urschel*, 159 Kan. 674, 681, 157 P.2d 805 (1945).

" 'In general, the elements which comprise a fraudulent conveyance are first, an intent on the part of the grantor to hinder, delay or defraud his creditors and second, the participation of the grantee in such fraudulent scheme or such knowledge on the latter's part of facts and circumstances as would impart knowledge of the fraud to him.' " *Mohr v. State Bank of Stanley*, 244 Kan. 555, 568, 770 P.2d 466 (1989) (quoting *Credit Union of Amer. v. Myers*, 234 Kan. 773, 778, 676 P.2d 99 [1984]).

In this case, the first element regarding the fraudulent intent of the Andersons was established by the earlier Kansas Supreme Court decision concerning Count I of the amended petition. *City of Arkansas City v. Anderson*, 243 Kan. 627, 638, 762 P.2d 183 (1988), *cert. denied* 109 S. Ct. 2449 (1989). The pivotal issue in this appeal is whether Kline and Guaranty had constructive notice of the fraudulent conveyance and, if so, whether they conducted a reasonable inquiry based upon the available information.

"Actual knowledge is not necessary; knowledge of circumstances sufficient to excite the suspicions of a prudent person and put him upon inquiry is as a general proposition equivalent to knowledge of the facts which a diligent inquiry would have disclosed." *Kuhn v. Wise*, 90 Kan. 583, 586, 135 Pac. 571 (1913). See *Vickers v. Buck*, 60 Kan. 598, 602, 57 Pac. 517 (1899). The Kansas Supreme Court has also held:

"Actual notice may be either express or implied; that is, it may consist of knowledge actually brought personally home, or it may consist of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact. . . . Actual notice is implied only when the known facts are sufficiently specific to impose the duty to investigate further, and when such facts furnish a natural clue to the ultimate fact." *Faris v. Finnup*, 84 Kan. 122, 124, 113 Pac. 407 (1911).

See *Penrose v. Cooper*, 88 Kan. 210, 214-15, 128 Pac. 362 (1912).

Here, the plaintiffs' memorandum supporting the summary judgment motion contained forty numbered paragraphs as the "Statement of Uncontroverted Facts." The response memorandum of Kline and Guaranty challenges only three of these paragraphs: 13(e), 38, and 39. The trial court's decision indicates the other paragraphs in the plaintiffs' memorandum "are accepted as true." The trial court also accepted as uncontroverted facts several portions of the T.J. Kline and Guaranty Service response memorandum. The remainder of the memorandum's "Additional Issues of Material Fact" were "rejected because they fail to comply with Supreme Court Rule 141." The trial court also noted "defendant's motion commingles facts, argument and law which is contrary to Rule 141."

The case law regarding Rule 141 supports the trial court's treatment of the memoranda submitted by the parties. See *Hammig v. Ford*, 246 Kan. 70, 75, 785 P.2d 977 (1990); *Danes v. St.*

*David's Episcopal Church*, 242 Kan. 822, 830, 752 P.2d 653 (1988); *Ruebke v. Globe Communications Corp.*, 241 Kan. 595, 604, 738 P.2d 1246 (1987); *Knight v. Myers*, 12 Kan. App. 2d 469, 476, 748 P.2d 896 (1988).

The uncontroverted paragraphs of the plaintiffs' memorandum recite the scenario of the various title insurance commitments from Stewart, including the third commitment in March of 1985 which contained the request for proof that the transfer of the Andersons' interest in the property which was the subject of the sale to K-M Land Co. was a bona fide transfer for value.

The statement of uncontroverted facts indicates that Guaranty and Kline each received a copy of the document from Stewart. The court also found, and it was uncontroverted, that Stewart did not accept the explanation of Bruce Moore, an attorney for the Andersons and K-M Land Co., who explained that the conveyance "was done in good faith for the purposes of estate planning."

Also, the court found that, after receiving the notice contained in the third title commitment from Stewart, the Andersons arranged to have Security Title insure around the problem.

In this case, the title insurance commitment from Stewart provided notice to Kline and Guaranty of a potential title problem. The document informed them of the conveyance and the foreign judgments on file. Stewart requested proof that the transaction was a bona fide transfer for value. These facts are sufficient "to excite the suspicions of a prudent person." *Kuhn v. Wise*, 90 Kan. at 586.

Kline and Guaranty argue that Terry Anderson, an employee of Security Title, conducted a reasonable inquiry on their behalf. They assert that the trial court erred by ruling that Terry Anderson could not be considered their agent.

The uncontroverted facts indicate that Terry Anderson did not conduct a diligent inquiry. Terry Anderson's affidavit states that he examined the foreign judgments filed in Johnson County and spoke with A. Scott Anderson, the Andersons' attorney, and the Andersons' accountant. Terry Anderson was not concerned about the foreign judgments because "neither judgment constituted a lien or encumbrance against the subject property." Terry Anderson relied upon A. Scott Anderson's assurance that Dr. Her-

bert Ketterman could or would satisfy the judgments. Terry Anderson failed to pursue several potential avenues of inquiry. He did not attempt to determine the value of any of the Andersons' other assets, he did not examine the information on file with the Secretary of State regarding K-M Land Co., nor did he seek to examine any of the corporate records of K-M Land Co. Terry Anderson did not contact the judgment creditors or the Kettermans to determine whether the judgments had been or would be satisfied by the assets of the Kettermans. Most importantly, there was no attempt to verify that K-M Land Co. actually gave valuable consideration in exchange for the property.

We conclude that the trial court did not err by granting summary judgment to the plaintiffs. Kline and Guaranty failed to comply with Rule 141 and conceded virtually all of the plaintiffs' statement of uncontroverted facts. The uncontroverted facts indicate that Kline and Guaranty were notified that the conveyance from the Andersons to K-M Land Co. was suspect. A reasonably diligent inquiry would have disclosed the nature of this transfer, which the Kansas Supreme Court later determined to be fraudulent, or at the very least would "excite the suspicions of a prudent person."

EQUITABLE ESTOPPEL

Kline and Guaranty contend the trial court erred by refusing to apply the doctrine of equitable estoppel, or the "two innocent persons" principle in their favor. They argue the plaintiffs could have, but failed to, file a notice of lis pendens pursuant to K.S.A. 60-2203a(a) and, thus, prevented any subsequent conveyance by the Andersons.

The trial court rejected the argument put forward by Kline and Guaranty which simply stated is that "[w]here one of two innocent persons must suffer, that one should bear the loss whose conduct or act placed it in the power of a third person to impose upon or deceive another." *Lumber and Grain Co. v. Eaves*, 114 Kan. 576, 581, 220 Pac. 512 (1923).

Kline and Guaranty cite the "two innocent persons" principle defined in 28 Am. Jur. 2d, Estoppel and Waiver § 62, and note the doctrine has been applied in a number of Kansas cases. However, the same section of this treatise also contains the following language.

"This principle does not mean, however, that one is to be held estopped when he innocently, for an honest purpose and with reasonable care, furnishes to a third party the means by which he perpetrates a fraud from which he who provides the means derives no benefit. If no fault or negligence is imputable to either party, the loss must remain where the course of business has placed it, and as between the two innocent parties, no cause of action arises thereon." 28 Am. Jur. 2d, Estoppel and Waiver § 62, p. 685.

We agree that compliance with the lis pendens statute is permissive, not mandatory. K.S.A. 60-2203a(a). We conclude that the plaintiffs had no duty to file such a notice. Since the plaintiffs had no duty to act, their inaction cannot be characterized as negligent.

While Kline and Guaranty complain that the plaintiffs did not diligently pursue their rights, the failure to investigate thoroughly the nature of the earlier conveyance illustrates a lack of vigilance by Kline and Guaranty. Plaintiffs did not provide the Andersons with the means to inflict a loss upon Kline and Guaranty. The plaintiffs were not obligated to file a notice of lis pendens and, thus, should not be subject to estoppel by their silence or inaction. The record does not support application of the two innocent persons doctrine in favor of Kline and Guaranty.

## REFUSAL TO GRANT EQUITABLE PROTECTION IN FAVOR OF KLINE AND GUARANTY

Finally, Kline and Guaranty argue that the trial court erred by failing to grant them equitable protection to the extent of the consideration paid, citing 37 Am. Jur. 2d, Fraudulent Conveyances §§ 120 and 122, and certain Kansas appellate decisions. They contend a purchaser with only constructive notice of fraud is entitled to such equitable relief.

Kline and Guaranty cite the following language from 37 Am. Jur. 2d:

"Where, however, the grantee in a fraudulent conveyance or transfer is not guilty of actual fraud, but is chargeable with knowledge of facts which warrant the law in holding him guilty of constructive fraud, the authorities generally hold that he is entitled to protection to the extent of the consideration paid by him." 37 Am. Jur. 2d, Fraudulent Conveyances § 120, p. 800.

Kline and Guaranty argue that, under this proposition, they are entitled to have the amount they paid protected by the court.

In our view, this argument fails for several reasons: (1) There is no finding or contention that Kline or Guaranty are guilty of constructive fraud. (2) Kline and Guaranty have confused the doctrine of constructive notice with the doctrine of constructive fraud. They contend a bona fide purchaser will take good title, whether the earlier transaction was actually or merely constructively fraudulent. However, when the fraud is constructive only, equity protects a fraudulent grantee to the extent of the consideration paid. See *Garden City Nat'l Bank v. Gann*, 121 Kan. 159, 161, 246 Pac. 971 (1926).

If the position of Kline and Guaranty were to be accepted, a person with constructive notice would be protected to the extent of the consideration paid. Such protection for a person with constructive notice would raise that individual's status to that of a bona fide purchaser for value.

Two older Kansas cases have already addressed the point raised by Kline and Guaranty. Neither supports the position of Kline and Guaranty.

In *New v. Smith*, 94 Kan. 6, 145 Pac. 880 (1915), a grantee with constructive notice was held not to be entitled to protection for the consideration paid.

In *Bush v. Collins*, 35 Kan. 535, 539, 11 Pac. 425 (1886), a businessman purchased the entire inventory of a wholesale store by making a down payment and executing a note due in 60 days for the balance of the purchase price. The buyer's agent immediately proceeded to arrange for shipment of the goods to another area, and shipped some of them. The same day the goods were shipped, attachments of the creditors of the store were levied upon the inventory. The buyer contacted the owner of the store and arranged to have a third party hold the note until the lawsuit was decided. Unfortunately for the buyer, he also paid some additional sums to the seller. The Kansas Supreme Court held that the buyer was only protected as to the amount of the down payment, because later payments by the buyer were made with actual notice of the fraud..

We agree with the rationale of these decisions and conclude, as did the Kansas Supreme Court in *New* and *Bush*, that only a bona fide purchaser is entitled to protection for consideration paid before receiving notice of the fraud. The facts in this case

indicate that the purchasers had constructive notice, as already concluded by the trial court and this court, and, therefore, the position of the appellants on this issue must fail. The case law simply does not support a conclusion that persons with constructive notice are entitled to such protection.

Affirmed.