(818 P.2d 805)

No. 65,840 ∎

WALLACE, SAUNDERS, AUSTIN, BROWN & ENOCHS, CHARTERED, *Plaintiff/Appellant*, v. LOUISBURG GRAIN COMPANY, INC., and K-M LAND COMPANY, INC., *Defendants*, and SOUTHWEST NATIONAL BANK; CITY OF ARKANSAS CITY, KANSAS; and CITY OF HESSTON, KANSAS, *Intervenors/Appellees*.

Opinion filed August 2, 1991.

*Paul Hasty, Jr.*, and *Mark V. Bodine*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellant.

*Thomas E. Ruzicka* and *Margaret A. Gallagher*, of Watson, Ess, Marshall & Enggas, of Olathe, for appellees.

Before ELLIOTT, P.J., GERNON, J., and WILLIAM D. CLEMENT, District Judge, assigned.

GERNON, J.: The law firm of Wallace, Saunders, Austin, Brown & Enochs, Chartered, (Wallace-Saunders) brought suit against Louisburg Grain Company, Inc., (Louisburg) and K-M Land Company, Inc., (K-M) for payment of legal services. Here, Wallace-Saunders appeals the trial court's decision striking its pleadings and ruling that Wallace-Saunders' judgment lien did not have priority over other judgment liens held by Southwest National Bank, the City of Arkansas City, and the City of Hesston, the intervenors here.

For an understanding of this appeal, it is important to note, as counsel did at oral argument, that this is the eighth case to reach the appellate courts of Kansas and Missouri involving Louisburg, K-M, A. Scott Anderson, and E. Sylvia Anderson. A history of the prior litigation and the relationship of the Andersons to Louisburg, K-M, and intervenors is detailed in *City of Arkansas City v. Anderson*, 243 Kan. 627, 762 P.2d 183 (1988), *cert. denied* 490 U.S. 1098 (1989).

We note that other cases involving the Andersons, Louisburg, or K-M, in which Wallace-Saunders appeared as counsel, and the years of such representation, include:

| 1986 | 59,514 | *City of Hesston, Kansas, and Southwest National Bank, Wichita, Kansas v. A. Scott Anderson, E. Sylvia Anderson, Herbert L. Ketterman, Grace Ketterman, and K-A Corporation* |
|------|--------|---|
| 1987 | 60,184 | *City of Hesston, Kansas, and Southwest National Bank, Wichita, Kansas v. A. Scott Anderson and E. Sylvia Anderson, et al. v. K-M Land Co. and Louisburg Grain Co., Inc.* |

| | | |
|---|---|---|
| 1987-88 | 60,359 | *The City of Arkansas City, Kansas, The City of Hesston, Kansas, and Southwest National Bank, Wichita, Kansas v. A. Scott Anderson, E. Sylvia Anderson, K-M Land Co., and Louisburg Grain Co., Inc.* |
| 1989 | 63,405 | *Federal Land Bank of Wichita v. A. Scott Anderson and E. Sylvia Anderson; and Donald K. Woolsey; Karl Alan Niebrugge and Joyce A. Niebrugge; City of Hesston; Southwest National Bank, Wichita, Kansas; The City of Arkansas City, Kansas; and the Board of County Commissioners of The County of Miami* |
| 1989-90 | 63,760 | *City of Hesston, Kansas, and Southwest National Bank, Wichita, Kansas, and City of Arkansas City, Kansas, and Southwest National Bank, Wichita, Kansas v. A. Scott Anderson, E. Sylvia Anderson, K-M Land Company, and Louisburg Grain Co., Inc.* |
| 1990 | 65,002 | *City of Arkansas City, Kansas, and Southwest National Bank, Wichita, Kansas v. Main Corporation, Herbert L. Ketterman, Grace Ketterman, A. Scott Anderson, and Sylvia Anderson* |

Here, the trial court was required to determine the validity of a judgment lien of Wallace-Saunders against Louisburg and K-M. Wallace-Saunders filed suit on December 21, 1988. On December 27, 1988, an "answer" was filed on behalf of Louisburg and K-M, signed by A. Scott Anderson, President, which stated in its entirety, "Defendant admits that the monies are due as claimed by the Plaintiffs, but the Defendant has no cash to pay." On January 4, 1989, a journal entry, noting that the defendants had confessed judgment, was filed granting judgment in full to Wallace-Saunders.

In October of 1989, Wallace-Saunders sought to execute on real property in Miami County which was titled in the name of Louisburg Grain Company, Inc. After execution, Wallace-Saunders moved for an order of sale and sent notice of sale to interested parties, including counsel for the intervenors.

The intervenors had previously obtained a judgment against A. Scott Anderson in the amount of $585,000 in another county and had registered this judgment in Miami County on October 23,

1985. On March 26, 1986, the intervenors registered another foreign judgment in Miami County in the amount of $2,604,029.40 against A. Scott Anderson and E. Sylvia Anderson. The intervenors also obtained a judgment in Harvey County against Louisburg and K-M directly in the amount of $116,119. This judgment was registered in Miami County on May 15, 1989.

Louisburg is owned in its entirety by K-M, which, in turn, is owned in its entirety by A. Scott Anderson and his family members.

On January 12, 1990, the intervenors filed a motion to set aside the writ of execution and to deny an order of sale. The intervenors' motion to set aside the writ of execution alleged that Louisburg and K-M were alter egos of A. Scott Anderson and that the intervenors had engaged in "extensive litigation" against Anderson and the companies over the preceding five years. The motion further alleged that Wallace-Saunders represented the Andersons and the companies in the litigation and that Wallace-Saunders' judgment was collusive or fraudulent and should be set aside. The intervenors' memorandum cited the Kansas Supreme Court decision in *City of Arkansas City v. Anderson*, 243 Kan. 627, and contended that five of the six badges of fraud identified in that decision were present in this dispute. The memorandum argued that the intervenors were entitled to priority over Wallace-Saunders' judgment lien. Central to intervenors' motion were two allegations:

"10. That this suit constitutes yet another attempt on the part of A. Scott Anderson to defraud the creditors of himself and of his alter ego, Louisburg Grain Company.

. "11. That if plaintiff has ever acted as defendants' attorney in this matter, or has given defendants legal advice with regard to same, that plaintiff's acquisition of a judgment lien against its own clients was collusive and improper and should be set aside."

On May 21, 1990, the district court sustained the intervenors' motion to set aside the writ of execution and ordered that a trial be set to determine the validity and priority of any judgment liens. The court stated in part:

"Certainly, there is an appearance of the indicia of fraud that exists in this case. First of all, the defendants have been the subject of litigation in other counties which have been reduced to judgment. The plaintiffs knew

of this litigation and participated in the defense of the defendants in that litigation. It appears that the plaintiff could have known that the grain elevator, which is the subject of the writ of special execution, could be one of the last assets of the defendants. Also, it is clear that a confidential relationship exists or has existed between the plaintiffs and the defendants as a result of the representation of the defendants in the litigation conducted in other counties. Certainly, it is not normal for an attorney to sue for a fee, at least not in Miami County, Kansas. The culmination of all of this leads the Court to the conclusion that these matters warrant further scrutiny.

"Certainly, this Court can reach no final conclusion until it is presented with evidence; evidence of the nature of the transaction between plaintiff and defendant; evidence of the relationship of the defendants to A. Scott Anderson and Sylvia Anderson; evidence concerning the timing of the law suit; why it was filed in Miami County, Kansas; why the writ of special execution was not requested for several months after a consent judgement was granted.

"All of these matters must be determined after the Court finds the facts. Facts can be determined only with the presentation of evidence, the testimony of witnesses, examination of documents and all subject to the rigors of cross examination. It is the opinion of this Court that justice in this particular case calls for such a trial."

The court, at a discovery conference, ordered:

"1: That Wallace, Saunders, Austin, Brown and Enochs shall produce all correspondence from A. Scott Anderson, E. Sylvia Anderson, K-M Land Company, Louisburg Grain Company and correspondence to A. Scott Anderson, E. Sylvia Anderson, K-M Land Company and Louisburg Grain Company from January 1, 1987 through the current date.

"2. That Wallace, Saunders, Austin, Brown & Enochs shall produce all time records, including timesheets and itemizations, from January 1, 1987 through the current date.

"3. That Wallace, Saunders, Austin, Brown & Enochs shall produce all written communications and notes relating to the employment agreement and contract between Louisburg Grain, K-M Land Company, A. Scott Anderson and/or E. Sylvia Anderson from January 1, 1987 through the current date."

The court, on October 8, 1990, denied Wallace-Saunders' motion for leave to file an interlocutory appeal on its motion for an in camera inspection. The basis for Wallace-Saunders' objection to the discovery order was its contention that the "information which has been ordered to be produced is subject to the attorney-client privilege and work product doctrine."

The intervenors countered by alleging that a prima facie case of fraud had been established on the part of the Andersons; that

Wallace-Saunders had represented all of the Anderson interests and entities for many years, including the transfers set aside by the Kansas Supreme Court in 243 Kan. 627; and that despite Wallace-Saunders' suit against Louisburg and K-M, Wallace-Saunders continued to represent the Andersons and their various entities in other counties.

The court further sustained the intervenors' motion to strike Wallace-Saunders' pleadings and further ordered that Wallace-Saunders' judgment did not constitute a prior lien in time to any other lien on the real estate involved.

On appeal, Wallace-Saunders raises three issues:

1. The court erred by ordering production of documents subject to attorney-client privilege.

2. The court abused its discretion by striking Wallace-Saunders' pleadings for failure to comply with court-ordered discovery.

3. The motion by the intervenors was not timely.

## PRODUCTION OF DOCUMENTS/ATTORNEY-CLIENT PRIVILEGE

The precise issue presented by Wallace-Saunders is whether the attorney-client privilege is applicable to the discovery ordered by the court, given the facts and circumstances here.

K.S.A. 1990 Supp. 60-226(b) defines the general scope of discovery and provides in part:

"Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows: (1) *In general*: Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ."

K.S.A. 1990 Supp. 60-226(c) authorizes the trial court to issue protective orders limiting the scope of discovery.

K.S.A. 60-426 defines the attorney-client privilege and provides in part:

"(a) *General rule*. Subject to K.S.A. 60-437, and except as otherwise provided by subsection (b) of this section communications found by the judge to have been between lawyer and his or her client in the course of that relationship and in professional confidence are privileged, and a client has a privilege . . . (2) to prevent his or her lawyer from disclosing

it . . . . The privilege may be claimed by the client in person or by his or her lawyer . . . .

"(b) *Exceptions.* Such privileges shall not extend (1) to a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the commission or planning of a crime or a tort . . . ."

The attorney-client privilege applies only to communications made to an attorney in his capacity as a legal advisor. *State v. Maxwell,* 10 Kan. App. 2d 62, 63, 691 P.2d 1316 (1984), *rev. denied* 236 Kan. 876 (1985).

The intervenors argue that any communication between Wallace-Saunders and the Andersons or Louisburg and K-M are not privileged because, when the law firm filed suit against Louisburg and K-M, it simply could not be acting in their behalf as their attorney and, further, that such communication is excepted out of the privilege under K.S.A. 60-426(b)(1). We agree.

The intervenors made a sufficient showing of fraud to justify some discovery. As the intervenors note, the Kansas Supreme Court

" ' "recognized six badges or indicia of fraud. The badges or indicia of fraud are: (1) a relationship between the grantor and grantee; (2) the grantee's knowledge of litigation against the grantor; (3) insolvency of the grantor; (4) a belief on the grantee's part that the contract was the grantor's last asset subject to a Kansas execution; (5) inadequacy of consideration; and (6) consummation of the transaction contrary to normal business procedures." ' " *City of Arkansas City v. Anderson,* 243 Kan. at 632 (quoting *Koch Engineering Co. v. Faulconer,* 239 Kan. 101, 105, 716 P.2d 180 [1986]).

" '[T]he concurrence of several badges of fraud are said to make out a strong case.' " *Anderson,* 243 Kan. at 633 (quoting *Koch Engineering Co. v. Faulconer,* 239 Kan. at 107).

Wallace-Saunders concedes that a relationship exists between its firm and the companies. Its counsel confirmed that the firm represented the Andersons and Louisburg in the previous litigation and indicated the firm continues to represent Louisburg. This admission establishes that Wallace-Saunders was aware of the litigation against its clients. The third badge, insolvency of the companies, was not clearly established, although the trial court noted that the proven circumstances suggested its likelihood. The trial court also indicated the circumstances suggested

the property in dispute was likely one of the last assets of the companies. The trial court also concluded that the transaction was consummated contrary to normal business procedures because fee collection does not ordinarily involve a lawsuit. In summary, the intervenors made a showing that five of the six badges of fraud could probably be established.

The United States District Court of Kansas has considered what degree of proof is required to invoke the "crime or fraud" exception of K.S.A. 60-426(b)(1). See *In re A.H. Robins Co., Inc.*, 107 F.R.D. 2 (D. Kan. 1985). In *Robins*, the court concluded that a prima facie showing of fraud was required to invoke the exception. 107 F.R.D. at 8.

Wallace-Saunders maintains that any communications between Wallace-Saunders and K-M, Louisburg, and the Andersons were made in the course of its professional relationship and made in confidence. The court's discovery order directs Wallace-Saunders to produce *all* written communication, timesheets, and correspondence "from January 1, 1987 through the current date." Although broad and likely to encompass materials not relevant, given the history of the parties as documented in published cases and the prima facie case of fraud found by the court, we cannot conclude that the court's order was an abuse of discretion.

Neither available authority nor the facts support Wallace-Saunders' contention that all communications with the Andersons, Louisburg, and K-M were privileged.

"The rule has always been that communications between attorney and client are privileged *when made in professional confidence*. Communications not made in such confidence are not so privileged." *State v. Maxwell*, 10 Kan. App. 2d at 63. (Emphasis added.)

The conflict of interest rules would appear to indicate that Wallace-Saunders could not act as the companies' attorney regarding this suit to collect fees. MRPC 1.7 concerning conflicts of interest provides in part:

"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

"(1) the lawyer reasonably believes the representation will not be adversely affected; and

"(2) the client consents after consultation." (1990 Kan. Ct. R. Annot. 228.)

We conclude that Wallace-Saunders was not acting, nor could it act, as attorney for Louisburg and K-M when it sued them to collect fees and obtained a judgment. Therefore, we find that all communications are discoverable as ordered by the court. Further, the showing of the badges of fraud clearly justifies the discovery of all information relevant to the claim that the answer and confession of judgment by A. Scott Anderson on behalf of Louisburg and K-M was fraudulent or collusive.

## SANCTIONS FOR FAILURE TO COMPLY WITH COURT ORDER

Whether to sustain a motion to strike a claim is discretionary with the court. *Vickers v. City of Kansas City*, 216 Kan. 84, 91-92, 531 P.2d 113 (1975). The guidelines set forth by the Supreme Court in determining whether a court has abused its discretion under K.S.A. 60-237(b) are as follows: " '[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion.' " 216 Kan. at 92.

K.S.A. 60-237(b)(2) contains permissible sanctions for failure to comply with a discovery order and provides in part:

"If a party . . . fails to obey an order to provide or permit discovery, . . . the judge before whom the action is pending may make such orders in regard to the failure as are just, and among others the following:

"(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

"(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

"[T]he trial court is vested with considerable discretion in the enforcement of its previously issued discovery orders and in the assessment of sanctions against noncomplying parties." *Vickers v. City of Kansas City*, 216 Kan. at 90. However, the Kansas Su-

preme Court has indicated: "The dismissal of a lawsuit and its equally severe sanction of granting a default judgment, while appropriate in certain circumstances [citations omitted], should only be utilized as a last resort when other lesser sanctions are clearly insufficient to accomplish the desired end." *Burkhart v. Philsco Products Co.*, 241 Kan. 562, 576-77, 738 P.2d 433 (1987).

The Kansas Supreme Court has stated:

" '[W]here a party has acted in willful and deliberate disregard of reasonable and necessary orders of the court and the efficient administration of justice, the application of a stringent sanction is fully justified and should not be disturbed.' [Citations omitted.]" *Beal v. Rent-A-Center of America, Inc.*, 13 Kan. App. 2d 375, 379-80, 771 P.2d 553, *rev. denied* 245 Kan. 782 (1989) (quoting *Williams v. Consolidated Investors, Inc.*, 205 Kan. 728, 733, 472 P.2d 248 [1970]).

The Supreme Court has noted: "Most of the cases in which a dismissal or a default judgment have been held proper sanctions involve parties who refuse or fail to follow a discovery order." *Burkhart v. Philsco Products Co.*, 241 Kan. at 578.

Here, Wallace-Saunders refused to comply with the court's order compelling production of documents, claiming it was subject to attorney-client privilege. Wallace-Saunders claimed that some of the information sought was not related to the "pending" suit and, therefore, was not discoverable. Wallace-Saunders refused to produce any documentation related to the "pending" suit. This lack of response clearly was contrary to the court's order.

Further, applying the holding in *Burkhart* to the facts here, the documents withheld would be dispositive to show the relationship of all parties and entities, *i.e.*, whether Louisburg and K-M were alter egos of the Andersons, and whether Wallace-Saunders and the Andersons were involved in fraud and/or collusion. We are persuaded that the trial court's decision was correct.

## TIMELINESS

Wallace-Saunders contends the intervenors' motion to set aside the writ of execution was not timely under K.S.A. 60-260(b).

K.S.A. 60-260(b) provides in part:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore de-

nominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . . The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . . This section does not limit the power of a court to . . . set aside a judgment for fraud upon the court."

K.S.A. 33-102 governs the effect of fraudulent transactions and provides:

"Every gift, grant or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, *judgment or execution, made or obtained* with intent to hinder, delay or defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the person or persons who shall purchase such lands, tenements, hereditaments, rents, goods or chattels, *shall be deemed utterly void and of no effect.*" (Emphasis added.)

Wallace-Saunders contends the intervenors' action was untimely because Wallace-Saunders' judgment was obtained January 4, 1989, and the intervenors' motion was not filed until January 12, 1990. Wallace-Saunders argues the intervenors' action is barred by the one-year time limit of K.S.A. 60-260(b).

A careful reading of the statutes, along with the particular facts of this case, suggests that the intervenors' action was timely.

First, K.S.A. 33-102 demonstrates a strong public policy to defeat fraudulent transactions. The language of the statute indicates such transactions "shall be deemed utterly void and of no effect." K.S.A. 33-102. By its own terms, the statute applies to judgments *or executions* "made or obtained with intent to hinder, delay or defraud creditors." K.S.A. 33-102. Second, K.S.A. 60-260(b) is arguably inapplicable because the statute specifies that it provides relief for parties but does not mention non-parties. Third, if K.S.A. 60-260(b) is applicable, it specifies that relief is available from "a final judgment, *order, or proceeding.*" (Emphasis added.)

In this case, the intervenors' motion did not seek to set aside Wallace-Saunders' judgment. Rather, the motion sought to set aside the writ of execution and to deny the pending request for an order of sale. The motion was filed approximately 2½ months after Wallace-Saunders filed the request to issue a writ of special execution, well within the one-year time limit of K.S.A. 60-260(b) for relief from an "order." The intervenors did not seek or obtain an order setting aside Wallace-Saunders' judgment in violation of

the time limits in K.S.A. 60-260(b). Instead, they sought to prevent efforts to execute upon or enforce the judgment, based upon their allegation that the judgment was fraudulent or collusive. We find that the intervenors' action is permissible and timely under K.S.A. 33-102 and K.S.A. 60-260(b).

Affirmed.