**GRANITE MANAGEMENT CORP., Plaintiff,**

v.

**Norman E. GAAR, Marilyn A.W. Gaar, and Ridgemar Group, L.L.C., Defendants.**

**No. CIV. A. 00–2194–KHV.**

United States District Court, D. Kansas.

March 7, 2001.

Mark A. Shaiken, Jeffrey A. Befort, Greta Ann McMorris, Stinson, Mag & Fizzell, P.C., Kansas City, MO, for Plaintiff.

Greg T. Spies, Thomas W. Collins, III, McDowell, Rice, Smith & Gaar, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Granite Management Corporation alleges that defendants engaged in fraudulent transfers in violation of Kansas and Missouri state law. This matter comes before the Court on the Motion To Dismiss (Doc. # 10) which Ridgemar Group, L.L.C. and Norman E. Gaar filed June 12, 2000, and Defendant Marilyn Gaar's Motion To Dismiss And Suggestions In Support (Doc. # 18) filed August 7, 2000. Defendants assert that the applicable statute of limitations bars plaintiff's claims. The Court previously converted defendants' motions to motions for summary judgment under Fed.R.Civ.P. 56, see Doc. # 38 (filed November 21, 2000), and provided the parties the opportunity to present to the Court all

material made pertinent to such motions by Rule 56. After carefully considering plaintiff's response and defendants' reply, the Court is ready to rule.

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); accord *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

In considering a summary judgment motion the Court must view the evidence in the light most favorable to the nonmoving party. *Tom v. First Am. Credit Union,* 151 F.3d 1289, 1291 (10th Cir.1998). Summary judgment may be granted, however, if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. Thus, " '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Thomas v. IBM,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## Facts

The following facts are uncontroverted or, where controverted, set forth in the light most favorable to plaintiff.

On April 2, 1987, Norman Gaar executed and delivered a $275,000 negotiable promissory note (the "Note") to Citytrust, a Connecticut commercial bank. Gaar obtained the loan to invest in Paytelephone II. Four weeks later, in conjunction with the Note, he executed a financial statement (the "1987 Financial Statement") which stated that he owned assets worth $5,455,500. See Complaint, Ex. A. The 1987 Financial Statement included an interest in the Burr Oak Woods Partnership (the "Burr Oak Partnership"), an interest in a condominium in Johnson County, Kansas (the "Pinebrook Property"), an interest in real estate in Johnson County, Kansas (the "Shawnee Property"), and an interest in a 509 acre farm on Pflumm Road in Miami County, Kansas (the "Pflumm Road Farm"). It also reflected that Gaar owned automobiles worth $65,000 and four airplanes worth $200,000.

On November 19, 1987, First National Bank ("FNB") purchased the Note from Citytrust. Gaar later defaulted. On October 11, 1989, FNS Corporate Funding, a subsidiary of FNB, filed suit against Gaar in the United States District Court for the District of Connecticut. This litigation continued for seven years, until the court entered judgment on October 10, 1996. Meanwhile, FNS discovered that FNB, not FNS owned the Note, and the district court granted a motion to substitute FNB as plaintiff. On September 30, 1994, FNB changed its name to Granite Savings Bank. Later, on June 30, 1995, Granite Savings Bank was merged into plaintiff, Granite Management Corporation.

Five years after FNS Corporate Funding filed suit, on May 7, 1994, Gaar trans-

ferred his undivided interest in the Burr Oak Partnership to himself and his wife, Marilyn Garr, as joint tenants with rights of survivorship. Later, on December 31, 1995, Gaar transferred to his wife his joint tenancy interest in the partnership.

On July 11, 1996, the United States District Court for the District of Connecticut granted summary judgment in favor of FNB and against Gaar. On July 24, 1996, the Clerk of the Court entered judgment in accord with the decision.

One month later, on August 14, 1996, Gaar formed Ridgemar Group, L.L.C. ("Ridgemar"), a Missouri limited liability company, to acquire, own and operate personal and real property. Gaar and Marilyn Gaar hold a 49 per cent interest in Ridgemar as tenants by the entirety. In August 1996, Marilyn Gaar transferred her undivided interest in the Burr Oak Partnership to Ridgemar. On August 14, 1996, Gaar transferred his interest in the Pinebrook Property to Ridgemar. On August 21, 1996, Gaar transferred to Ridgemar his interests in the Shawnee Property and the Pflumm Road Property.

During 1996, Gaar also transferred to Ridgemar the titles to a 1979 P 210 airplane, a Skybolt airplane, a 1988 Rotocraft helicopter and a 1982 Mercedes automobile. In 1996, Gaar and Marilyn Gaar also transferred stock certificates to Ridgemar.

On October 10, 1996, the United States District Court for the District of Connecticut entered an amended judgment against Gaar in the amount of $543,909.44, and on November 21, 1996, the court certified the judgment as final. On December 19, 1996, Gaar appealed the judgment to the United States Court of Appeals for the Second Circuit. As part of the appeal settlement process Granite requested that Gaar prepare an affidavit setting forth his financial condition.

On February 25, 1997, Gaar executed an Affidavit of Financial Condition (the "1997 Financial Statement"). Plaintiff received the 1997 Financial Statement on March 4, 1997. That financial statement listed an interest in Ridgemar but did not specifically list an ownership interest in much of the property that had been reflected in the 1987 Financial Statement. Specifically, it included no reference to the Burr Oak Partnership, the Pinebrook Property, the Shawnee Property, the Pflumm Road Farm or the aircraft. The affidavit indicated that Ridgemar owned certain unspecified personal property, unimproved land and an 84–unit apartment complex.

On April 7, 1997, Garr executed a Supplemental Affidavit of Financial Condition of Norman Gaar (the "April 7 Financial Statement"). The April 7 Financial Statement contained an Exhibit C that set forth transfers of property from Gaar and Marilyn Gaar to Ridgemar, including the Burr Oak Partnership, a farm, a rental house, a rental condominium, the aircraft, the Mercedes and miscellaneous stock. Although defendants assert that Gaar's counsel transmitted the April 7 Financial Statement to counsel for plaintiff within 30 days of its execution, counsel for plaintiff did not receive it.

On May 1, 1997, plaintiff's counsel received from Gaar's counsel a Supplemental Affidavit of Financial Condition of Norman E. Gaar, dated April 22, 1997 ("the April 22 Financial Statement"). The April 22 Financial Statement did not include an Exhibit C or any list of property transfers from Gaar to Ridgemar.

On May 7, 1997, Granite filed a request for a garnishment order in Johnson County, Kansas. On August 4, September 4 and December 8, 1997, plaintiff filed requests for non-wage garnishment orders against the First National Bank of Olathe. The request of August 4 resulted in a

court order to pay $147.19 to the court in partial satisfaction of plaintiff's judgment. The requests of September 4 and December 8 were served but unsatisfied.

On August 18 and November 10, 1997, the Circuit Court of Jackson County, Missouri issued writs of garnishment against Gaar's law firm, McDowell, Rice, Smith & Gaar. On December 10, 1997, the law firm answered the November writ and stated that it was paying 25 per cent of Gaar's wages to his former wife, Joanne Gaar.

On October 3, 1997, the United States Court of Appeals for the Second Circuit affirmed the trial court's amended judgment against Gaar.

On October 20, 1998, plaintiff served interrogatories in aid of execution which requested that Gaar identify all real property in which he held an interest in the last ten years, the date that his interest in the property terminated, the person or entity to whom he transferred the property, and the price he received for it. The interrogatories also requested that Gaar identify all real or personal property that he had conveyed or disposed of by sale, assignment or gift in the past five years, and that he identify all transfers of property or funds to any corporation, including Ridgemar Group, in which he had a legal interest. Also on October 20, 1998, plaintiff served requests for production of documents which specifically asked Gaar for all documents related to transfers of any assets in which Gaar held a legal interest within the last five years. After the circuit court in Missouri granted Gaar's unopposed request for a 60 day extension of time to answer the interrogatories and request for production, Gaar objected to each interrogatory and request and provided no information or documents.

On February 2, 1999, Granite served interrogatories in aid of execution and requested that Gaar provide information concerning real property in which he held an interest in the last six years, along with documents on the termination of Gaar's interests in the property and the person or entity to whom the property was transferred. The interrogatories also requested that Gaar identify all real or personal property valued over $5,000 that he had conveyed or disposed of by sale, assignment or gift in the past six years, and provide the address of all real property in which Ridgemar had a legal interest. On March 8, 1999, Gaar requested a 30 day extension of time to answer the interrogatories of February 2. The circuit court in Missouri granted the request and on April 14, 1999, Gaar served his responses and objections. On October 15, 1999, counsel for Granite sent Gaar a letter which stated that his responses and objections were inadequate. On December 21, 1999, counsel for Gaar provided plaintiff a detailed description of Gaar's transfers of real and personal property to Ridgemar. On February 25, 2000, Gaar gave Granite copies of documents which reflected his transfers.

Two months later, on May 2, 2000, plaintiff filed this lawsuit, claiming that Gaar and Marilyn Gaar had transferred property for less than reasonable consideration with intent to defraud plaintiff. Plaintiff also alleged that the transfers constituted constructive fraud. The alleged fraudulent transfers include the Pinebrook Property, the Shawnee Property, the Pflumm Road Farm, the Cessna, the Skybolt, the Rotocraft, the stock and the Mercedes.

## Analysis

Defendants argue that the Court should grant their motions for summary judgment because as a matter of law, the applicable statute of limitations bars plaintiff's claims. Defendants claim that under Kansas law a two-year statute of limitations applies to fraud claims, see K.S.A. § 60–513(a) (ac-

tion for relief on ground of fraud must be brought within two years, but cause of action shall not be deemed to have accrued until fraud is discovered), while plaintiff seeks to apply the four-year statute of limitations under the Kansas Uniform Fraudulent Transfers Act (KUFTA), K.S.A. §§ 33–201 *et seq.*[1] The KUFTA became effective January 1, 1999. The Court need not determine whether it operates retroactively, however, because defendants' motions for summary judgment are not well taken under either a two-year or a four-year statute of limitations.

■ To establish fraudulent conveyance, plaintiff must prove two things. First, the grantor must have intended to hinder, delay, or defraud his or her creditors. Second, the grantee must have participated in or have constructive or actual knowledge of the fraudulent scheme. *See City of Arkansas City v. Anderson,* 15 Kan. App.2d 174, 180, 804 P.2d 1026, *rev. denied* (March 12, 1991). The Kansas Supreme Court recognizes six badges or indicia of fraud:

> (1) a relationship between the grantor and grantee; (2) the grantee's knowledge of litigation against the grantor; (3) insolvency of the grantor; (4) a belief on the grantee's part that the contract was the grantor's last asset subject to a Kansas execution; (5) inadequacy of consideration; and (6) consummation of the transaction contrary to normal business procedures.

*Koch Eng'g Co. v. Faulconer,* 239 Kan. 101, 105, 716 P.2d 180 (1986).

■ Under Kansas law, the statute of limitations does not begin to run until the fraud is discovered or discoverable.

Fraud is deemed discoverable at the point when, with reasonable diligence, it could have been discovered. *See Waite v. Adler,* 239 Kan. 1, 6, 716 P.2d 524 (1986). A person must be aware of enough facts indicating fraud that a reasonably prudent person would investigate. *See Wolf v. Brungardt,* 215 Kan. 272, 281, 524 P.2d 726 (1974). Most of the transfers at issue occurred in 1995 and 1996. Defendants originally contended that Granite had actual knowledge of the transfers on or before May 6, 1997, when Granite allegedly received the April 7 Financial Statement, Exhibit C, listing all of the property transfers from Gaar and Marilyn Gaar to Ridgemar. In response, plaintiff produced evidence that it never received the April 7 Financial Statement, and therefore that document did not give it notice of the fraud. Defendants now concede this point, for purposes of summary judgment. They assert, however, that information contained in the 1987 Financial Statement, and the two remaining financial statements from 1997, was sufficient as a matter of law to alert a reasonable person to his or her cause of action.

The 1987 Financial Statement included Gaar's interest in the Burr Oaks Partnership, the Pflumm Road Farm, the Pinebrook Property, the Shawnee Property, four aircraft and various automobiles. The 1997 Financial Statement included an interest in Ridgemar but (aside from the automobiles) no interests in the foregoing property. Defendants assert that this disparity would have alerted a reasonable person that Gaar had transferred or otherwise disposed of certain assets.

---

1. Alternatively, plaintiff asserts that the real estate transfers are governed by the 15 year statute for unspecified real estate transfers, *see* K.S.A. § 60–507, and that a four-year statute of limitations applies to other transfers, see R.S. Mo. §§ 428.005 *et seq.* The Court need not address these arguments because on the current record the Court finds that plaintiff's claims are not barred as a matter of law under a two-year statute of limitations.

The financial statements do not compel a conclusion, however, that with reasonable diligence plaintiff necessarily could have discovered the alleged fraud in 1997. Gaar's assets changed substantially from the 1987 Financial Statement to the 1997 Financial Statement. One possible reason for the significant changes is that Gaar fraudulently transferred the property to avoid plaintiff's potential or actual judgment. On the other hand, the statements do not reflect when Gaar made the transfers and the ten-year period between the two statements is of sufficient length that one would expect some differences. The mere fact that Gaar owned different (or substantially fewer) assets over a ten-year period would not necessarily cause a reasonable creditor to investigate a potential fraud.

Defendants assert that at minimum plaintiff should have discovered the alleged fraudulent transfer of the Burr Oak property. The 1987 statement showed that Gaar owned 33 per cent of the Burr Oak property, which the statement listed as investment real estate valued at a little over two million dollars. The 1997 Financial Statement did not specifically list an interest in Burr Oaks, but showed that Ridgemar had an interest in an 84 unit apartment complex. The April 22 Financial Statement, which Garr also executed in 1997, included an appraisal for an apartment complex valued at 2.4 million dollars. An attachment included an address and identified the owner as the Burr Oak Woods partnership. Defendants assert that this information would have placed a reasonable person on notice that the Ridgemar apartment complex was actually the same property as the Burr Oak complex and that Gaar had transferred the complex to Ridgemar. Even if a reasonable person would have so concluded, the mere fact that Gaar had transferred his interest in the apartment complex does not mean that a reasonable person should then

have discovered the fraudulent nature of the transfer. This information might be enough to demonstrate two badges of fraud, specifically, a relationship between the grantor and the grantee, and the grantee's knowledge of litigation against the grantor. But the record reveals no suggestion of the other indicators of fraud, e.g., insolvency of the grantor, a belief by the grantee that the asset transferred was the last asset subject to execution, the inadequacy of the consideration, or consummation of the transaction contrary to normal business procedures. See Koch Eng'g Co. v. Faulconer, 239 Kan. 101, 105, 716 P.2d 180 (1986).

Plaintiff points out that beginning in July 1997, it attempted to garnish Gaar's wages and bank accounts. When that failed, in October 1998, plaintiff propounded discovery in aid of execution. Gaar objected to the discovery and then obtained extensions of time, but answered the discovery requests on April 12, 1999. In his responses Gaar stated that he had not transferred the listed property *after* the date of the amended judgment, and referred plaintiff to the public record for information. Plaintiff received the responses on April 14, 1999, and asserts that that is the earliest date on which plaintiff had knowledge of-or reasonably could have discovered—the alleged fraud.

The Court does not necessarily agree that April 14, 1999, is the earliest date on which plaintiff reasonably could have discovered the fraud. After initially attempting to satisfy its judgment by garnishing Gaar's wages and bank accounts, plaintiff apparently took no action to find Gaar's assets between January 1998 and October 1998. Plaintiff then propounded discovery in aid of execution on October 20, 1998. Gaar did not serve an answer, however, until almost six months later on April 14, 1999. Even if plaintiff had propounded the discovery in January 1998, if Gaar took

six months to respond, plaintiff would not have been on notice of the alleged fraud before May 2, 1998. Under that scenario, this action, filed on May 2, 2000, would not be barred by a two-year statute of limitations..

In sum, the question when a plaintiff could have with reasonable diligence discovered the alleged fraud is one of fact for the jury. *Wolf v. Preferred Risk Life Ins. Co.,* 728 F.2d 1304, 1307 (10th Cir.1984) (questions when reasonable person would discover injury and what reasonable person would have done are generally within province of jury). Based on the record before it on summary judgment, the Court finds that defendants have failed to show as a matter of law that plaintiffs should have discovered the alleged fraudulent transfers on or before May 2, 1998.

**IT IS THEREFORE ORDERED** that the Motion To Dismiss (Doc. # 10) which Ridgemar Group, L.L.C. and Norman E. Gaar filed June 12, 2000, and Defendant Marilyn Gaar's Motion To Dismiss And Suggestions In Support (Doc. # 18) filed August 7, 2000, which the Court construes as motions for summary judgment, be and hereby are **OVERRULED.**